TYLER, J.
I felt at first some difficulty in the construction of the will in this case, being inclined to the opinion, from the structure of the will, that the testator intended to preserve the devise to his two-grandsons, Willis and Thomas Wootten, in that branch of his family, if either of them left issue. But if such was *his intention, he has failed to express it, and it ' is not to be inferred necessarily. And that in fact is the only question in the cause- — it being conceded, that if both the grandsons died, without issue living at the time of their deaths, the entire property devised to Willis and Thomas Wootten would go to Benjamin Wootten. The testator, in substance, leaves to his two-grandsons, Willis and Thomas Wootten, one-third part of his slaves (not otherwise disposed of) during their natural lives, to-be equally divided between them, and in case they should die leaving lawfully begotten heir or heirs of their (body) bodies, he gives the property loaned to his two grandsons to such heir or heirs.
Let us pause here, and inquire under this bequest, Willis Wootten being dead without heirs of his body, whether, if Thomas Wootten was dead, -leaving heir or heirs of his body, such heir could under this bequest take the entire property left the two grandsons for life. Heirs of the bodies of A. and B., man and wife, are the heirs of both A. and B.; but heirs of the bodies of C. and D., as applied to two males, necessarily means heirs of each, as the heirs of the body of C. are not heirs of D., and vice versa; and the language of the will is, “if they die leaving lawfully begotten heir or heirs of their bodies, I give the property loaned them to such heir or heirs.” But if any doubt existed as to this construction thus far, it is determined by the following clause in the will, which declares that “in case they (the two grandsons, Willis and Thomas Wootten,) or either of them die *821 leaving no such heir, I give the property loaned them to my grandson Benjamin Wootten.” Arid this clause of the will, construed literally, would create a repug-nancy, by passing the property loaned to both grandsons over to Benjamin Wootten on the death of either without heir, and thus deprive the surviving grandson of his life-estate, and his heir, if he left one, of all interest in the property, which would be manifestly ^against the intention of the testator — and when two parts of a will are thus inconsistent, the latter is not to prevail, until every endeavor fails to give such reasonable construction to the entire dispositions as will render every part operative ; and if the testator expresses himself incorrectly, the court will supply proper words if the meaning distinctly appear. (2d Roper on Legacies, 1460, Rules 3d and 10th. j In this case the entire dispositions in the will may be rendered operative by reading the will as if it had been written grammatically, to wit: I leave my two grandsons Willis and Thomas Wootten one-third part of my slaves (not otherwise disposed of) during their natural lives, to be equallj' divided between them, and in case they should die leaving lawfully begotten heir or heirs of their bodies, I give the property loaned them to such heir or heirs of their bodies respectively. But in case they, or either of them, should die leaving no such heir, I give the property loaned them or him, as the case may be, to my grandson Benjamin Wootten. Or, in other words, if Willis and Thomas Woot-ten both die without heir or heirs of their bodies, I give the property loaned both to Benjamin Wootten, and if one of them dies without heir or heirs of his body, I give the property loaned him to Benjamin Wootten.
I am, therefore, for reversing the decree.
FIELD, P.
As the controversy in this case is confined to the bequest of slaves, | and has no reference to the devise of lands to Willis and Thomas Wootten, my remarks will be confined to the-bequest of slaves, taking no notice of the devise of lands; and, in order to make myself understood, I think it best to consider the will in detached parcels as I proceed, but to bring them all together ultimately.
These words are found in the third clause of the will: “I loan to my grandsons Willis I and Thomas Wootten one-third part of my | slaves, not otherwise disposed of, duringj their natural lives, and in case they ; should die *leaving lawful begotten ; heir or heirs of their body, I give the i property loaned them to such heir or heirs.” j These words give the life-tenants a joint [ estate. The duration of the estate cannot be determined until the surviving life-tenant shall die; for, by leaving the remainder over to the heirs of the body, who are to take by purchase and per capita under the will, and as it cannot be determined who constitute the remaindermen until the life-tenants die, the time when the remainder to the heirs is to take effect is when the surviving life-tenant shall die, and then the heirs of the body of both life-tenants take the remainder per capita as purchasers under the will. In the mean time, after the death of one of the life-tenants, whether leaving heirs of his body or not, the entire interest in the life-estate would accrue to the survivor, not by virtue of his jus accrecendi, which prevails at common law amongst joint tenar ts, but from the terms of the will, the effect of which is to postpone the determination of the life-estate until the time arrives when the remainder over to the heirs of the body of the life-tenants is to take effect.
The will does not stop here, but continues in these words: “But in case they, or either of them, should die leaving no such heir, I give the property loaned them to my grandson Benjamin Wootten.” Let us suppose the will had stopped here. Then if both of the life-tenants had died without leaving heirs of the body, Benjamin Woot-ten would have taken the remainder limited over to him upon the death of the life-tenants. About this there can be no doubt. But suppose one of the life-tenants had died leaving such heirs of the body, and the other had died leaving none, then the contingency had happened upon which the remainder over to Benjamin Wootten was given, and therefore Benjamin Wootten would be entitled to claim the remainder. His right to claim something would be irresistible, because the testator, in express terms, provided that if either of the life-tenants should die leaving *no lawful heirs of his body, the property left to them should go to Benjamin Woot-ten. Whilst it is clear that Benjamin Wootten would be entitled to something, there is some ambiguity as to the amount or extent of his claim.
Neither does the will stop here. There are other words, yet to be noticed, which, I think, remove the above ambiguity and all other difficulties in interpreting the will. In the same clause of the will we find these words: “The property loaned to my two grandsons as above to be equally divided between them.” These words converted the joint bequest to the life-tenants into a tenancy in common, gave to each a separate estate in one-half of the bequest, which on his death passed over to his heirs, if any. If none, it became a vested remainder in Benjamin Wootten by the words, “if either of them should die leaving no such heir, I give the property loaned them to Benjamin Wootten.” Willis Wootten is dead. Suppose he had died leaving heirs of his body, those heirs would immediately have taken the remainder in the property held by him for life absolutely and without qualification or condition. On the death of Thomas Wootten without heirs, the remainder over in-his share would become vested in Benjamin Wootten, which is all that he could claim. He could not, because Thomas had died without heirs, go back on the heirs of Willis and divest them of the remainder which they had .taken possession of on the *822 death of their father. There are no words in the will to give that right to Benjamin Wootten. He would therefore have to be content with what he received on the death of Thomas without heirs. But the facts are, that Willis died without ..leaving heirs of the body, and Thomas is jret living. As the remainder would have devolved on the heirs of Willis immediately on his death leaving heirs, so likewise must it have devolved on Benjamin Wootten when Willis died without heirs. If it did not so devolve on him, to whom do the negroes belong? . i
Not to Thomas, because, as tenant in common, *he has taken possession of 1 his share of the property bequeathed to Willis and Thomas, and is entitled to no part of the half held by Willis for life. Being tenants in common and partition having been made between them of the property, no right by survivorship, nor in the nature of survivorship, existed between them which would entitle Thomas to resume and hold possession of the share of Willis during his own life. Willis’ share is not in a state of abeyance. The doctrines of estates in abeyance apply to no such case. Nor did it pass under the will to the residuary legatee, or by law to the distributees of the testator, because the testator, having carved out an estate for life and given that life-estate to a life-tenant, and the remainder over to the heirs of the body of the life-tenant, if any — if none, to Benjamin Wootten — the whole estate and interest in the slaves was bequeathed by the testator, and therefore could not pass as undis-posed of estate either to the residuary legatee or to the distributees of the testator. It must, therefore, from necessity, pass immediately on the death of Willis without heirs of his body to Benjamin Wootten, the last remainder-man.
The correctness of this interpretation will be fully exemplified by suppljdng the words “to him or” in one part of the third clause of the will, and the words “him or” in another part of the same clause. I supply these as explicative words, to express a plainlj' implied meaning of two sentences in the third clause of the will, which read thus on the face of the will: “And in case they should die leaving lawful begotten heir or heirs of their body, I give the property loaned them to such heir or heirs; but in case they, or either of them, should die leaving no such heir, I give the property loaned them to my grandson Benjamin Wootten.” The explicative words above mentioned being supplied in two places of the clause to express an implied meaning, the sentences will read thus: “In case they should die leaving lawful heir or heirs of their body, I give the property loaned to him or them to *such heir or heirs; but in case they, or either of them, should die leaving no such heir, I give the property loaned him or them to my grandson Benjamin Wootten.” This is one way in which we may properly read the will, to express by : words that implied meaning which may be : plainly inferred from the words found in . the will.
There is another mode of reading the will which is perfectly fair and legitimate and in which there is not a word omitted nor added nor modified, except to change certain pronouns from the plural to the singular number, which is necessary only to give the sentences their grammatical construction, and which in no wise changes i the meaning of those words, except in making them apply to one thing, instead of appljúng to two or more things. “The testator having bequeathed the estate to 1 Willis and Thomas, to be equally divided between them,” and directed, that in case “either of them should die without heirs,” remainder over to Benjamin Wootten, the third clause of the will may be read so as to gi%e a separate estate for life to each one of the grandsons Willis and Thomas, remainder over to theii; respective issue, if any, if none, to Benjamin Wootten, as follows, to wit:
“I loan to Willis Wootten one-half of one-third of my negro slaves, not otherwise disposed of, during his natural life, and in case he should die, leaving lawful begotten heir or heirs of his body, I give the property lent to him to such heir or heirs; but in case he should die, leaving no such heir, I give the property loaned him to Benjamin Wootten. I log.n to Thomas Wootten the other half of one-third of my negro slaves, not otherwise disposed of, during his natural life, and in case he die, leaving lawful begotten heir or heirs of his body, I give the property loaned him to such heir or heirs, but in case he should die, leaving no such heir, I give the property loaned him to Benjamin Wootten.”
Here you have the very language of the will, as it operates on the share of each life-tenant and his heirs, in a plain, simple, perspicuous form and shape: the ^reading of which relieves the mind from all that doubt and difficulty which you have to encounter, when contemplating the will in the chaotic mass in which it was presented by the testator and his draughtsman. Seen in this light, it is manifest in the event that has happened of the death of Willis Wootten without heirs, that the remainder, dependent on his life-estate, on his death became the property of Benjamin Wootten, the last remainder-man.
I am, therefore, for reversing so much of the decree as denies this right to Benjamin Wootten, and directed the sheriff to deliver the slaves over to Thomas Wootten.
THOMPSON, J., and CEOPTON, J., concurred.
DECREE.
: : This day came the parties by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid, and the arguments of counsel, is of opinion, that so much of the said decree as disaffirms the appellant’s right to the slaves referred to in the bill, and directed the sheriff to deliver to Thomas *823 Wootten the slaves named Sail, Amy, Abraham and Tom, in the proceedings mentioned, is erroneous: Therefore, it is decreed and ordered, that so much of the said decree as is above declared to be erroneous, be reversed and annulled, and the residue thereof affirmed; and that the appellee Thomas Wootten do pay unto the appellant his costs by him expended in the prosecution of his aforesaid appeal here. And this court being of opinion, that the appellant is entitled to recover all the surviving slaves in the bill mentioned and referred to, as having been held by Willis Wootten, jr. for his life, under the last will and testament of his grandfather, Willis Wootten the elder, and to the increase of the females thereof, it is ordered that this cause be remanded to the Circuit Court of York county, with directions to that court to render a decree therein in conformity with this opinion.